#27138-a-SLZ

**2015 S.D. 55**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DAKOTA TRAILER
MANUFACTURING, INC.,                    Appellee,

    v.

UNITED FIRE &
CASUALTY COMPANY,                       Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHERYLE W. GERING
Judge

* * * *

J. G. SHULTZ
CALEB J. VELDHOUSE of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls, South Dakota          Attorneys for appellee.


DANIEL K. BRENDTRO
DENNIS L. DUNCAN of
Zimmer, Duncan & Cole, LLP
Sioux Falls, South Dakota          Attorneys for appellant.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 24, 2015

OPINION FILED **07/01/15**

#27138

ZINTER, Justice

[¶1.]        As a part of Dakota Trailer Manufacturing's business, it makes radiator components for an unrelated company.  The component work is performed in one of Dakota Trailer's locations that the National Council on Compensation Insurance (NCCI) originally classified as a "machine shop" for workers compensation insurance rating purposes.  After an inspection, NCCI changed the location's classification to "welding or cutting."  Dakota Trailer appealed, and both the Workers' Compensation Appeals Board (Board) and the South Dakota Department of Labor (Department) affirmed the new classification.  The circuit court, however, reversed.  United Fire & Casualty Company, Dakota Trailer's workers' compensation insurer, appeals.  We affirm the circuit court.

*Facts and Procedural History*

[¶2.]        Dakota Trailer manufactures trailers at its plant in Yankton.  It also manufactures component parts (radiator subassemblies) for L&M Radiators at a separate location.  The radiator subassemblies are manufactured in a portion of L&M Radiators' shop that Dakota Trailer subleases.

[¶3.]        NCCI is a rating organization that establishes statewide workers' compensation rates in South Dakota and thirty-seven other states.  It gathers payroll and loss data from insurance companies and uses that information to create risk classifications (codes) and insurance rates for the codes.  NCCI publishes a guidebook called the "Scopes Manual" that aids in interpretation and selection of the appropriate codes.  NCCI also performs random inspections to make sure classification codes are properly applied.

#27138

[¶4.]     NCCI determined that Dakota Trailers had both a primary operation (trailer manufacturing) and a secondary operation (production welding) that were conducted at three locations.[1]  The issue in this case involves the work performed at "Location 3," where employees make the radiator subassemblies.  Employees at this location cut, form, bend, shape, drill, weld, and turn raw materials into the subassemblies.  Upon completion, the subassemblies are taken to L&M Radiators' adjacent room where its employees finish and incorporate the subassemblies into radiators.

[¶5.]     After a 2011 inspection, NCCI assigned the classification code 3365, "Welding or Cutting NOC [(not otherwise classified)] & Drivers," for Location 3.  Before the inspection, the classification code was 3632, "Machine Shop NOC."  The actual NCCI codes (the *Basic Manual of Workers Compensation Insurance*) are not part of the record.  The case was decided on the language of the NCCI Scopes Manual, which describes and explains the codes.

[¶6.]     The Scopes Manual for Code 3365 provides in relevant part:

> Code 3365 applies to all types of contract welding or cutting operations that are not otherwise classified. *This classification contemplates welding or cutting operations performed by specialist contractors doing both shop work or* [sic] *outside work.*
> . . .
> Code 3365 is applicable to specialist contractors engaged exclusively in all testing or inspection of oil or gas pipes provided that the testing or inspection is performed in conjunction with the *construction* of the oil or gas pipeline. . . .

---

1.     When evaluating an employer's risk classification, NCCI assigns separate codes if a business has a "secondary operation" at a separate location.  If there are multiple activities in the same physical location, the highest rated code is utilized for all employees.  Neither Dakota Trailer nor United Fire contends that these practices affect this case.

Testing or inspection operations performed by employees of insureds also engaged in construction operations shall be assigned to the appropriate construction classification.

. . . .

Code 3365 is *restricted* to insured specialist contractors or separate subsidiaries *engaged solely in welding or cutting operations* who do not engage in the operations specified in this classification's footnote.[2]

*Code 3365 is a construction classification* . . . . It should be noted that Code 3365 also includes shop operations. We distinguish between Code 8227 operations and Code 3365 shop operations in the following manner. Code 8227 operations consist of labor that maintains, repairs and stores an insured's materials and equipment. *Shop operations assigned to Code 3365 consist of labor (usually skilled) that engages in operations that are specifically related to the work contemplated by the construction or erection code applicable to the business. . . .*

(Emphasis added.) The Scopes Manual for Code 3632 provides in relevant part:

Code 3632 applies to the manufacture or repair of machines as well as *general job machining.* It must be emphasized that Code 3632 is an NOC classification and is applied to operations only when such operations are not specifically contemplated by another manual classification(s).

Metal castings, forgings, bars, rods, flats, tubing, angles, pipe and pipe fittings, chains, sockets, gears, shafting, pulleys, hardware, sheet metal and some lumber and paint may be used. *A variety of processes may be involved such as* boring, turning, planing, *shaping,* milling, *drilling*, punching, *grinding,* tapping, threading, shearing, *bending, forming,* riveting, *welding,* painting, *inspecting and testing. . . .*

The machining operations are typical machine shop operations consisting of sawing, centering, turning, boring, facing, reaming, shaping the nose (i.e., "Nosing In" as specified in the class phraseology), heattreating, thread milling, application of copper bands, washing, painting and packing. . . .

(Emphasis added.)

---

2.    United Fire conceded that Dakota Trailer did not engage in an activity that falls within the footnote.

[¶7.] Dakota Trailer disagreed with the classification change and notified NCCI. After reviewing the decision internally, NCCI adhered to its code 3365 classification. Dakota Trailer then sought review before the South Dakota Workers Compensation Appeals Board, which affirmed the change. Dakota Trailer appealed that decision to the Office of Hearing Examiners. After a contested case hearing, a hearing examiner issued recommended findings of fact and conclusions of law supporting the change. The Department accepted the recommendation and approved the change.

[¶8.] Dakota Trailer then appealed to the circuit court, which reversed and reinstated machine shop code 3632. The court, based on the language in the Scopes Manual, ruled that code 3365 was only intended to apply to "specialist contractors in the construction industry who are engaged solely in welding or cutting operations, whether those operations [are] performed in a shop or performed outside." Although the court acknowledged witnesses' testimony indicating that they understood code 3365 was not restricted to the construction industry, the court concluded that the witnesses' interpretation was not supported by the language of the Scopes Manual.

[¶9.] United Fire now appeals, arguing that the circuit court did not give sufficient deference to NCCI's determination and the hearing examiner's findings. In the alternative, United Fire argues that the administrative determination was correct as a matter of contract interpretation. United Fire finally argues that the circuit court erred in reversing the administrative determination without entering an explicit finding that Dakota Trailer's substantial rights were prejudiced.

*Decision*

[¶10.] The parties disagree on the appropriate standard of review of agency decisions. United Fire argues that the circuit court erred in failing to give the Board's and the Department's decisions sufficient deferential review; i.e., review for clear error or an abuse of discretion. Dakota Trailer responds that the circuit court properly reviewed the administrative decision for clear error as to historical facts and de novo as to the classification conclusion. Dakota Trailer also contends that the circuit court reached the correct result.

[¶11.] Our review in an appeal from the circuit court's review of a contested case proceeding is governed by SDCL 1-26-37. *Martz v. Hills Materials*, 2014 S.D. 83, ¶ 14, 857 N.W.2d 413, 417. "[I]n reviewing the circuit court's decision under SDCL 1-26-37, we are actually making 'the same review of the administrative tribunal's action as did the circuit court.'" *Peterson v. Evangelical Lutheran Good Samaritan Soc.*, 2012 S.D. 52, ¶ 13, 816 N.W.2d 843, 847 (quoting *State, Div. of Human Rights ex rel. Miller v. Miller*, 349 N.W.2d 42, 46 (S.D. 1984)). "The agency's findings are reviewed for clear error." *Martz*, 2014 S.D. 83, ¶ 14, 857 N.W.2d at 417. "However, findings based on documentary evidence . . . are reviewed de novo." *Id.* "Questions of law are also reviewed de novo." *Id.* "[W]e perform that review of the agency's findings 'unaided by any presumption that the circuit court's decision was correct.'" *Peterson*, 2012 S.D. 52, ¶ 13, 816 N.W.2d at 847 (quoting *Kermmoade v. Quality Inn*, 2000 S.D. 81, ¶ 10, 612 N.W.2d 583, 586).

[¶12.] The Board and the Department (adopting the hearing examiner's proposed findings and decision) determined that, under the Scopes Manual, code

3365 was the appropriate classification. The historical facts regarding the activities performed by Dakota Trailer at Location 3 are not in dispute. The question in this case involves an interpretation of the Scopes Manual, which was incorporated into the insurance contract.[3] "Insurance contract interpretation is a question of law, reviewable de novo." *Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co.*, 2012 S.D. 73, ¶ 7, 822 N.W.2d 724, 726 (quoting *De Smet Ins. Co. of S.D. v. Gibson*, 1996 S.D. 102, ¶ 5, 552 N.W.2d 98, 99).

[¶13.]     Both code 3365 and code 3632 mention welding and machining operations. Both codes are also NOC classifications ("not otherwise classified"). That means that each applies only if no other classification more specifically describes the insured's business.[4]

[¶14.]     The Scopes Manual provides that code 3365 "contemplates welding or cutting operations performed by specialist contractors doing both shop work or [sic] outside work." But the manual additionally provides that "Code 3365 is a

---

3.     United Fire and Dakota Trailer are contractually obligated to use the rate codes that NCCI establishes. Dakota Trailer's insurance policy provides that "[t]he premium for this policy will be determined by our manuals of rules, classifications, rates, and rating plans," and code 3365 is specifically referenced in the policy. Thus, workers' compensation classification codes in the NCCI Scopes Manual are incorporated into workers' compensation insurance policies. *See Travelers Indem. Co. v. Int'l Nutrition, Inc.*, 734 N.W.2d 719, 727 (Neb. 2007) (concluding that a reference to "Our manuals" in the insurance policy incorporated the NCCI manual into the policy).

4.     The manual provides that code 3365 "applies to all types of contract welding or cutting operations that are not otherwise classified." The manual also provides that "Code 3632 is an NOC classification and is applied to operations only when such operations are not specifically contemplated by another manual classification(s)."

construction classification." And in this case, Dakota Trailer is not involved in the construction business.

[¶15.] United Fire, however, argues that code 3365 is not limited to construction activities because code 3365 covers "both *shop* [and] outside work." (Emphasis added.) But the Scopes Manual provides that "[s]hop operations assigned to Code 3365 consist of labor (usually skilled) that engages in operations that are specifically *related to the work contemplated by the construction or erection code applicable to the business*." (Emphasis added.) And as previously indicated, Dakota Trailer is not involved in the construction business.

[¶16.] However, United Fire also points out that an NCCI representative testified that they applied code 3365 because it is "not limited to just construction. . . . [I]t is broader than that. . . . [I]t is under [NCCI's] construction umbrella[,] . . . [b]ut it's also used for shop operations that are performed by a specialty contractor, which is what [NCCI] understood Dakota Trailer to be doing at" Location 3. The NCCI representative also pointed out that Dakota Trailer's insurance agent testified that code 3365 had been assigned to a client with welding shops even though that client was not in the construction business.

[¶17.] Although there is no dispute about the witnesses' testimony, the testimony is not consistent with the language of the Scopes Manual. The manual provides that code 3365 is intended to apply to specialist contractors in the construction industry. Indeed, as previously noted, the manual specifically provides that code 3365 "is a construction classification[.]" Additionally, when referring to other applications of code 3365, such as testing and inspection of oil or gas

pipelines, the manual provides that the activity must be "in conjunction with the *construction* of the" pipelines. (Emphasis added.) Finally, the manual provides: "Shop operations assigned to Code 3365 consist of labor (usually skilled) that engages in operations that are specifically related to the work *contemplated by the construction* or erection *code applicable to the business*." (Emphasis added.) Therefore, we agree that the relevant language in the Scopes Manual contemplates "shop operations," but the language also limits those operations to work performed in a shop for a business classified in a construction or erection code. And there is no evidence that Dakota Trailer's business is so classified. Because these witnesses' use and application of code 3365 is not consistent with the plain language of the manual, United Fire's reliance on witness testimony is misplaced.

[¶18.] The inapplicability of code 3365 is supported by the administrative findings below. The Scopes Manual provides that code 3365 "is *restricted* to insured specialist contractors or separate subsidiaries engaged *solely* in welding or cutting operations[.]" (Emphasis added.) However, the hearing examiner found that Dakota Trailer engaged in more than welding and cutting operations at Location 3. He found that Dakota Trailer "would take raw materials and cut, form, bend, shape, drill, and make them into parts for the radiators." He further found that "33% of the radiator work was cutting and bending and 33% was welding. The remaining 33% was machining and quality control." Therefore, Dakota Trailer's activities at Location 3 were not restricted "solely" to welding or cutting, a requirement for inclusion in code 3365.

[¶19.] The findings of fact also indicate that Dakota Trailer's activities at Location 3 fit within code 3632, the classification for general machining processes—Dakota Trailer's previous classification. The Scopes Manual provides: "Code 3632 applies to the manufacture or repair of machines as well as general job machining." General machining activities specifically include "shaping, . . . drilling, . . . bending, forming, . . . [and] welding[.]" Considering the hearing examiner's findings set forth in ¶ 18, *supra*, code 3632 specifically covers Dakota Trailer's activities at Location 3.

[¶20.] Dakota Trailer was not engaged in the construction business. Additionally, the administrative findings of fact reflect that Dakota Trailer's activities at Location 3 were not limited solely to cutting and welding. The findings further reflect that Dakota Trailer engaged in general job machining processes that are described in code 3632 and not listed in any other more specific classification. We affirm the circuit court's decision. We find no merit in United Fire's remaining arguments.

[¶21.] GILBERTSON, Chief Justice, and SEVERSON and KERN, Justices, and PALMER PERCY, Circuit Court Judge, concur.

[¶22.] PALMER PERCY, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.